## HUDDLESTON et al. v. NISLAR et al.
### No. 4231.

Court of Civil Appeals of Texas. Amarillo. May 21, 1934.

Rehearing Denied June 11, 1934.

W. P. Walker, of Crosbyton, for appellants.

Vickers & Campbell, of Lubbock, for appellees.

JACKSON, Justice.

This is an appeal by G. E. and C. M. Huddleston, operating under the firm name of Huddleston Construction Company, from a judgment obtained against them in the district court of Crosby county for the sum of $583.95, by O. L., Joe N., and Mrs. J. N. Nislar, doing business under the firm name of the Nislar Hardware Company.

The appellants on May 4, 1932, entered into a written contract with the highway department of the state of Texas, by the terms of which they agreed, at their own proper cost and expense, to improve road No. 137 in Lubbock county in accordance with the specifications, proposals, and plans attached to and made a part of the contract. No plans or specifications appear in the record. A bond was given by appellants to guarantee the performance of their contract, but as the sureties are not parties to this litigation, the provisions thereof are not material.

J. N. and H. B. Jordan, composing the firm of Jordan Construction Company, were made defendants in the suit, and appellees secured a judgment against them by default for the sum of $721.42, and no complaint is made thereof.

The Jordan Construction Company submitted to appellants an offer in writing in which they proposed to do the topping and furnish the rock for improving said road, but the proposition was refused because the financial statement furnished and the bond tendered by said company were not satisfactory to appellants.

Anticipating that such contract would be closed, the Jordan Construction Company rented from J. W. Bartholow of Dallas, a rock crusher, and moved it from Lamb county to the Yellow House Canyon in Lubbock county, where they opened a quarry. Whether it was opened before the above proposition was refused by appellants is not shown, but while they operated the quarry they produced screenings or chats, and No. 1, No. 2, and No. 3 stone which they sold to purchasers who desired any of such grade of products. They endeavored to sell rock for road construction to the Panhandle Construction Company, but did not succeed.

The said company received the following order from the appellants:

"Huddleston Construction Co.,
"Crosbyton, Texas.
"To Jordan-Hall Construction Co.,
"Place: Lubbock, Texas.
"Ship to Job #716 B HWY 137 Road site delivery, Date July 30, 1932. Mail all invoices to Crosbyton office.
"Ofer 101
"Please enter our order for 200 cu. yds. or more per day of crushed rock, State Highway Department specifications, at $2.75 per cu. yd. f. o. b. shoulders of roadway. Order subject to cancellation. 8781.9 cu. yds. is total yardage job will require. Freight by truck prepaid.

"By    C. M. Huddleston."

Accompanying this order was a letter of the same date stating: "Enclosed herewith please find our order No. 101 for crushed rock to be delivered on Lubbock County job No. 137. You may begin to deliver of this material at once. However, it would be advisable to be sure that it will meet the engineer's specifications. We suggest that you deliver a good average sample of the material to Mr. Guy R. Johnson, Engineer, at Lubbock, for a test to be made at once."

In compliance with this order the Jordan Construction Company crushed and delivered to appellants 4,552 yards of rock, which was approved and accepted and used in the construction of said road. The appellants paid for the rock so received by discharging, at the request of the Jordan Construction Company, various obligations due the creditors thereof, but appellees were not included among the creditors appellants were requested to pay.

The Jordan Construction Company, after receiving the order from appellants and during the time they operated the quarry, purchased from appellees necessary dynamite, caps, fuses, shovels, and picks, the items of which aggregated $721.42. Said company became involved financially, failed to pay the rental for the crusher, and was forced to discontinue operation at said quarry. The appellants then rented the crusher from J. W. Bartholow and operated the quarry until sufficient rock had been obtained to complete their road contract.

The Jordan Construction Company defaulted in the payment of the account sued on, and

the appellees filed their verified itemized account with the county clerk and notified the highway department and appellants of their claim, to establish which this suit was instituted.

On the trial, in response to a peremptory instruction, the jury found that the appellants were due the appellees the sum for which, with interest thereon, judgment was rendered.

The appellants challenge as error the action of the court in directing a verdict and rendering judgment thereon against them, claiming that the undisputed testimony shows that they made no contract, either express or implied, with appellees to pay for the material they furnished to the Jordan Construction Company, and also shows that said construction company was a materialman and not a contractor or subcontractor in contemplation of law, and no lien attached in favor of appellees on the money due appellants for the improvement of the road.

· The material involved in this suit was sold by appellees to, and charged to, the Jordan Construction Company. No negotiations for the purchase thereof were had by appellees with appellants, and the only communication between them relative thereto occurred after approximately all of such material and tools had been used by, and the operation of the quarry abandoned by, the Jordan Construction Company; and if appellants are liable for such material such liability is imposed by law.

The Jordan Construction Company quarried and delivered to appellants at the side of the road being improved rock that conformed to the specifications of the state engineer, but said company performed no labor on said road.

The Constitution and statutes have created what are called involuntary liens in favor of "mechanics, artisans and material men of every class" (Const. art. 16, § 37), which includes original contractors, subcontractors, materialmen, laborers, etc., who furnish labor or material, machinery, fixtures or tools, to erect or repair any house, building or improvements whatever to any private owner or his agent, if the proceedings prescribed for fixing such lien are followed. Articles 5473 to 5479 (Vernon's Ann. Civ. St.) inclusive, provide the procedure if appellees had desired to avail themselves of the Mechanic's Lien Law and fix a lien against the property of the Jordan Construction Company. Ball v. Davis, 118 Tex. 534, 18 S.W.(2d) 1063. However, appellees elected to impound the money due the appellants from the state, under Vernon's Ann. Civ. St. art. 5472a, which was enacted because no lien could be fixed on public improvements, which article, so far as necessary to a disposition of this appeal, provides: "That any person, firm or corporation, or trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements."

Article 5160, in part, provides that: "Any person or persons * * * entering into a formal contract with this State * * * for the construction .of any * * * public work shall be required, before commencing such work, to execute the usual Penal Bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract."

The Mechanic's Lien Laws are so interrelated with the statutes for impounding the money due on public improvements, their provisions will be considered in determining appellants' contention.

We do not find the words "original contractor," "subcontractor," or "materialman" defined in our statutes.

Article 10, subd. 1, is as follows: "The ordinary signification shall be applied to words, except words of art or words connected with a particular trade or ,subject matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject matter."

It is held that the term "original contractor" in the Mechanic's Lien Law "is used in its usual sense, and designates one who for a fixed price agrees to perform certain work for some one." Van Horn Trading Co. v. Day et al. (Tex. Civ. App.) 148 S. W. 1129, 1130.

"It is the duty of .a court to give to language used in a statute the meaning with which it was used ·by the legislature if .this can be ascertained; and to do this, if the words used be not such as have a peculiar meaning when applied to a given art or trade with reference to which they are used in the statute, the only safe rule is to apply to them their ordinary meaning, for the legislature must be presumed to have used them in that sense in which they are ordinarily understood." Turner v. Cross et al., 83 Tex. 218, 18 S. W. 578, 579, 15 L. R. A. 262.

■ We think it is clear that the Legislature employed the words "materialman" and "subcontractor" in the Mechanic's Lien Law as they are ordinarily understood.

"The term 'subcontractor' has a well-defined meaning in building contracts and as used in its technical sense it means one who takes from the principal contractor a specific part of the work and does not include laborers or materialmen." 9 C. J. 694.

"A subcontractor is one who takes from the principal contractor a specific part of the work, and the term does not include laborers or materialmen." Young Men's Christian Ass'n of North Yakima v. Gibson et al., 58 Wash. 307, 108 P. 766, 769.

To the same effect are the holdings in Farmers' Loan & Trust Co. v. Canada & St. Louis Ry. Co. et al., 127 Ind. 250, 26 N. E. 784, 11 L. R. A. 740; Ryndak v. Seawell, 13 Okl. 737, 76 P. 170; Friedman v. Hampden County, 204 Mass. 494, 90 N. E. 851; Tipton Realty & Abstract Co. v. Kokomo Stone Co., 61 Ind. App. 681, 110 N. E. 688.

Within the meaning of the Mechanic's Lien statutes, "A materialman * * * is a person who does not follow the business of building or contracting to build homes for others, but who manufactures, purchases or keeps for sale materials which enter into buildings and who sells or furnishes such material without performing any work or labor in installing or putting them in place." 40 C. J. 130, § 142.

A party furnishing stone, finished and ready for use in a building at the time of its delivery, is a materialman and not a subcontractor. Foster Lumber Co. v. Sigmi Chi Chapter House of De Pauw University, 49 Ind. App. 528, 97 N. E. 801.

"One who furnishes to a contractor, but does not install, steel sash as called for by plans and specifications, and by whom working drawings are to be submitted for approval, and who neither employed nor performed any labor on the sash after delivery, is a materialman." Edward E. Buhler Co. et al. v. New York Dock Co. et al., 170 App. Div. 486, 156 N. Y. S. 457, 459.

A party who agreed with a contractor to furnish sand and gravel, acceptable to the city engineer, for street improvements, and delivered such material on the work as required, was a materialman and not a subcontractor. Neary et al. v. Puget Sound Engineering Co. et al., 114 Wash. 1, 194 P. 830.

"Clinton's contract was to furnish the stairs completed according to certain specifications for this particular house but not to attach them to the house or work on them after they were delivered on the premises. He contracted with appellant to build the stairs to fit these specifications and in short to do all that he (Clinton) contracted to do in regard to the stairs." Clinton was a materialman only, and appellant was not entitled to a lien because he furnished material to a materialman. Rudolph Hegener Co. v. Frost et al., 60 Ind. App. 108, 108 N. E. 16.

See, also, Harris & Stunston, Inc., Ltd., v. Yorba Linda Citrus Ass'n (Cal. App.) 26 P. (2d) 654.

■■ In view of the uncontroverted facts and these authorities, we are of the opinion that the Jordan Construction Company sustained to appellants the relation of a materialman and not that of a subcontractor.

The parties have cited no authorities, and we have found none, giving a materialman who furnishes material to another materialman a lien to secure the payment for material so furnished. We conclude, therefore, that the appellees were materialmen who furnished material to another materialman, and hence had no lien on the money due appellants from the state, and that the impounding of such moneys was unauthorized.

Appellees' recovery against appellants, under their pleadings, depended solely on the validity of the lien which they asserted, and, if we are correct in the foregoing conclusions, no lien exists in their behalf against the money impounded, and the judgment of the court against appellants is reversed and here rendered in their favor. The judgment for the appellees against the Jordan Construction Company is not disturbed.